## THE M. & M.

No. 1102–KA.

First Division, Ketchikan.

Feb. 10, 1928.

H. D. Stabler, U. S. Atty., and George W. Folta, Asst. U. S. Atty., both of Juneau, for the United States.

A. H. Zeigler, of Ketchikan, for defendant.

REED, District Judge.

This action is based upon a libel of information filed by the United States attorney on October 6, 1927, against the gas screw vessel M. & M., charging that the vessel on August 18, 1927, was used and employed to fish, and did fish, for salmon for commercial purposes in the waters of Hetta Inlet in the First division, territory of Alaska, which waters were then and there closed to fishing, and that said vessel thereby became subject to forfeiture, and that the same was seized and forfeited to the United States for violation of law on October 5, 1927, and praying condemnation and sale of the vessel in accordance with section 6 of the Act of Congress of June 6, 1924, 43 Stat. 464, 466 (48 U.S.C.A. §§ 226, 227), entitled, "An Act For the protection of the fisheries of Alaska, and for other purposes."

A monition was duly issued, and within the time prescribed therein the Hetta Packing Company appeared as claimant of the vessel, and, intervening in its own interest, denied all the allegations of the libel of information except that the vessel was seized as forfeited for violation of the fisheries law on October 5, 1927, as alleged in the libel.

By section 1 of the Act of June 18, 1926, 44 Stat. 752 (48 U.S.C.A. § 221), amending section 1 of the Act of Congress of June 6, 1924, the Secretary of Commerce was authorized to set apart from time to time and reserve fishing areas in the waters of Alaska, over which the United States had jurisdiction, and within such areas establish closed seasons during which fishing may be limited or prohibited as he may prescribe, and that from and after the creation of such fishing area and during the time such fishing is prohibited it shall be unlawful to fish therein or operate any boat, seine, trap, or other gear or apparatus for the taking of fish. By a circular of date December 26, 1926, all fishing was prohibited in Hetta Inlet on the West Coast of Prince of Wales Island north of a line running east (magnetic) from Eek Point to the opposite shore.

One F. A. Cloudy, a witness on behalf of the United States, testified that he was a stream guard on behalf of the Bureau of Fisheries; that about 10:30 a. m. on Wednesday, August 18th, while passing in his boat the mouth of Hetta creek, situated some few miles north of the line run from Eek Point, in a magnetic course, to the opposite shore and in the waters in which all fishing was prohibited by the Secretary of Commerce, he noticed a man in a boat near the mouth of Hetta creek, and, proceeding further, he observed the gas boat M. & M. lying between two rocks, the engine of which boat appeared to be going; that he changed his course and approached the M. & M. and saw that they had a purse seine set and that there were salmon within the web of the seine; that, as he approached closer, one of the men on the M. & M. said, "We are caught, we might as well let them go," to which remark the captain assented, and they allowed the fish to escape from the net.

There was also the testimony of R. Swomola, who testified that in the month of September he called upon one Eliason, who was captain of the boat, and Eliason admitted that he had been fishing within the waters of Hetta creek on August the 18th, and that he had not made a dollar during the whole season.

The testimony on the part of the defendant was that of Eliason, who testified that he had not been fishing in the waters of Hetta Inlet; that about seven or eight hundred yards from the mouth of Hetta creek he allowed his seine to run in the water for the purpose of washing it and not for the purpose of fishing; that he drew in his seine, pursing it, as he was drawing it in, and caught no fish.

■ I am satisfied from the testimony adduced at the hearing that Eliason was fishing as testified by the stream watchman of the Bureau of Fisheries, F. A. Cloudy, and that the M. & M., being the vessel from which the fishing was done, is subject to forfeiture under section 6 of the Act of June 6, 1924.

20

Some question was raised by defendant's counsel as to the nature of the seizure of the vessel M. & M. on the 5th of October, 1927. It appears that the Bureau of Fisheries directed the seizure of the vessel for violation of the fisheries law and the regulations thereunder, that the warden went upon the boat and posted a notice thereon stating that the vessel was seized for violation of the fisheries law and warning all persons to keep off the same; the captain of the vessel, Eliason, who was a witness for the defendant, on seeing the notice, went to the warden and asked if he could remain on the vessel, and was referred to the United States attorney. The United States attorney advised him he had no objection to him sleeping on the vessel, for the reason Eliason alleged he had no place to go and no money.

It seems to me that the seizure was a constructive seizure, and the mere fact that Eliason, the captain of the vessel remained thereon would not necessarily void the seizure made by the warden of the Bureau of Fisheries. The seizure was made October 5th, and on October 7th the libel of information was filed and the vessel was taken in charge by the United States marshal for condemnation.

It further appears that the claimants to the M. & M. in their intervening claim admit that the vessel was seized as alleged in the libel of information. I am satisfied that the seizure was legal and the court had jurisdiction to enforce the forfeiture. It is well settled that, after a vessel is brought into the custody of the United States marshal by proper admiralty process, any irregularity in the initial seizure is immaterial and waived by the filing of a claim or answer. See The Rosalie M (C.C.A.) 12 F.(2d) 970.

Let a decree be entered providing for the condemnation and sale of the vessel as forfeited under section 6 of the Act of Congress of June 6, 1924, entitled, "An Act For the protection of the fisheries of Alaska, and for other purposes."